[No. 25278. Department One.   December 4, 1934.]

THE STATE OF WASHINGTON, *Respondent,* v. PAUL
PATRICK, *Appellant.*[1]

[1]Reported in 38 P. (2d) 261.

*Rummens & Griffin,* for appellant.

*E. W. Schwellenbach* and *S. M. Driver,* for respondent.

MILLARD, J.—Predicated upon the statute (Rem. Rev. Stat., § 2601 [P. C. § 8944]) which provides that

"Every person who, with intent to deprive or defraud the owner thereof . . .

"(3) Having any property in his possession, custody or control, as bailee, . . . agent . . . shall . . . appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . . shall be guilty cf larceny,"

an information charging Paul Patrick and Victor C. Seiler with the crime of grand larceny was filed in the superior court for Grant county. Over objection, the court permitted a trial amendment to the information by adding the words "and one Fred Radach" after the words "F. H. Jansen." At the close of the state's case, the court granted a motion for directed verdict, dismissing defendant Seiler. The jury returned a verdict of guilty as to Patrick, who appealed from the judgment and sentence pronounced upon the verdict.

Counsel for' appellant insist that appellant was a

purchaser, not a bailee, of the wheat, therefore he could not be guilty of the crime charged. Counsel further argue:

"The State charged Patrick with conversion *in Grant County* of wheat, the property of Jansen and Radach, *unlawfully and feloniously* having the wheat in his possession, custody or control *as bailee and agent*.

"In the first place, the wheat was never *unlawfully* or *feloniously* in the possession of appellant.

"From the actual delivery of the wheat by Jansen to the Atwood siding, the wheat was *lawfully* and *rightly* in the possession of appellant.

"Both Jansen and Radach knew that the wheat was going to be shipped to the Coast. During the entire possession of the wheat in Grant county, it was then unquestionably in the rightful possession of appellant. If that possession ever became 'unlawful' and 'felonious,' paradoxical as it may seem, it was at a time when appellant did not 'possess,' the wheat, to-wit: at the time it was sold by appellant in *King county*.

"Hence, if a conversion occurred, the venue of this action was and is in King county and not in Grant county.

"The motion to dismiss should have been granted upon this ground alone."

The information, as amended,

". . . accuses Paul Patrick and Victor C. Seiler of the crime of grand larceny committed as follows, to-wit: That the said Paul Patrick and Victor C. Seiler in the county of Grant, state of Washington, on or about the 27th day of September, 1932, did then and there being unlawfully and feloniously having in their possession, custody or control as bailees and agents, 650 bushels of baart wheat, the property of one F. H. Jansen and one Fred Radach of the approximate value of $200, appropriate to their own use said wheat, with intent to deprive and defraud the owner thereof . . . ."

The information is unambiguous. The absence therefrom of a comma between the words "feloniously" and "having" did not mislead the appellant. It is clear that the appellant was charged—he knew that he was so accused—with appropriating to his own use the property of another in his possession, custody or control as a bailee or agent. It follows that, if appellant had possession, custody or control of the wheat as bailee or agent, such possession, custody or control was not unlawful or felonious. The crime charged was appropriation by the appellant to his own use of property of another in his possession or custody as a bailee or agent.

The unlawful and felonious appropriation of the property was effected when the appellant shipped the wheat from Atwood siding in Grant county to Fisher Flouring Mills in King county, and draft was drawn on the purchaser in payment for the wheat. If, however, the offense was partly committed in Grant county and partly in King county, where the wheat was delivered to appellant's purchaser, the jurisdiction is in either county. Rem. Rev. Stat., § 2013 [P. C. § 9391]; *State v. Knutsen,* 168 Wash. 633, 12 P. (2d) 923.

The facts, summarized as follows, establish the status of appellant as a bailee, not a purchaser, and sustain the verdict that appellant unlawfully and feloniously appropriated the wheat to his own use while bailee thereof.

Paul Patrick and Myrtle Patrick, a marital community, operated, under the firm name of Fred Schwab Commission Company, three grain warehouses in Grant county, one each at Ephrata, Coulee, and Wheeler. Victor Seiler was manager of the warehouse at Wheeler. That warehouse was three or four miles northeast of Atwood siding. The wheat in question

was placed in the custody of appellant at Atwood siding, and from that point appellant shipped it to a purchaser in King county. When wheat was received at the grain warehouses, receipts were issued therefor and copies of the receipts were transmitted by mail to appellant's main office at Ephrata.

F. H. Jansen was operating a farm, which he was purchasing from Fred Radach, at Tiflis, about two miles from Atwood station, which was a siding where railroad cars were placed for use of shippers. On August 15, 1932, Jansen delivered three hundred and forty-five sacks of wheat at Atwood siding. Forty-five of the sacks were sold to appellant by Jansen, who informed appellant's manager of the Wheeler warehouse that the remainder, or three hundred sacks of wheat, belonged to Radach, to whom appellant should send a receipt therefor. A check dated August 19, 1932, in the amount of $44.76, as payment in full for the forty-five sacks, payable to Jansen, was given to Jansen, who cashed same.

Radach, who had in the past delivered other wheat at Atwood siding and had never sold it, did not learn until some time thereafter of the delivery by Jansen of his three hundred sacks of wheat to appellant at Atwood siding or station. He telephoned appellant's manager of the Wheeler warehouse, requesting an advance on the wheat. The request was granted. On August 27, 1932, the Schwab Commission Company, by Victor C. Seiler, issued a check in the amount of $190, payable to Fred Radach. The check recites that same is an "advance on wheat."

Accompanying the check was a promissory note of the same date as the check and in the same amount, payable to appellant's firm on or before March 1, 1933, with interest at eight per cent per annum, which note Radach was required to sign as maker for the advance

or loan to him on his wheat then in the custody or control of appellant—the same wheat that was delivered to appellant at Atwood siding. That note was later indorsed by appellant to the First National Bank of Ephrata, together with two warehouse purchase receipts, as collateral security for the note, issued to Radach, covering this wheat of Radach's delivered to appellant. Radach never indorsed those receipts; in fact, he never saw them until some months later, when they were shown to him at the bank.

In October or November, 1932, a negotiable warehouse receipt dated October 26, 1932, was issued to Radach by the Schwab Commission Company, covering the three hundred sacks of wheat delivered to appellant at Atwood siding. The receipt recites an advance of $190, with interest at eight per cent per annum from August 27, 1932, on that wheat. All that Radach ever received for the three hundred sacks of wheat was $190, and his note therefor was pledged by appellant to a bank and is now held by the receiver of that bank as a part of its assets.

Appellant shipped the above described wheat on August 20, 1932, to the White-Dulaney Company in Seattle, and eventually sold it to that company, or to the Fisher Flouring Mills in Seattle, for whom it acted. Radach never sold the wheat to anyone, nor did he authorize his bailee to sell it to anyone. On August 23, 1932, appellant drew a draft on the Fisher Flouring Mills covering the shipment. The balance due after the draft was honored was paid to appellant by the White-Dulaney Company's check of September 27, 1932. Appellant deposited that check in the same bank in Ephrata to which he indorsed Radach's note and received a credit therefor, as above recited.

To state the facts is to declare the law. It can not be successfully urged that appellant bought Radach's

wheat. If he purchased the wheat, why did he issue a negotiable warehouse receipt for it, advance $190 on the wheat and take a promissory note for the amount of the advance? The facts conclusively show that the transaction was a bailment, not a sale, and that, in selling the wheat and pocketing the proceeds, the appellant committed the crime charged and of which he stands convicted. No explanation has ever been offered by appellant for these transactions. Appellant did not testify; in fact, no evidence was offered on behalf of the appellant.

If appellant intended to purchase the wheat of Radach, as he purchased Jansen's wheat, he would not have required Radach to give a promissory note for the advance of $190 on the wheat. Assuming, but not conceding, that appellant had the right to ship Radach's wheat to King county, or elsewhere, by reason of the fact that it was delivered at Atwood siding instead of at the Wheeler warehouse, appellant was not authorized to sell it.

Appellant next complains of the court's refusal to instruct the jury as to his theory. What was appellant's theory? No testimony was offered by him or in his behalf. There is an absence of substantial evidence to support his theory that he purchased the wheat and was not a bailee thereof, hence he was not entitled to the instruction requested. 16 C. J. 964.

"Assuming then, that the majority rule is as stated, was there here any evidence, or reasonable inference from evidence, from which the jury might have found that appellant was so induced or lured into the commission of the crime charged? If there was such evidence, an instruction along the lines requested would have been proper and a refusal to give it would have been error. If there was no such evidence, or reasonable inference from the evidence, any instruction on the subject would have been improper." *State v. Lambert*, 148 Wash. 657, 269 Pac. 848.

■ The instructions requested did not make such a clear distinction between "bailment" and "sale" as entitled the appellant to the granting of his request. Under the proposed instructions, the jury could hardly do other than find that the transaction was a sale, therefore the appellant was not guilty of the crime charged. The requested instruction being in part incorrect, it was not error for the court to refuse same as a whole. *State v. Gohn,* 161 Wash. 177, 296 Pac. 826.

■ The appellant has no just cause to complain of the court's refusal to give the requested instruction, as the court in three instructions to the jury clearly, simply and sufficiently covered the question of bailment, and imposed upon the state the burden of proving beyond a reasonable doubt that the appellant was guilty of the crime charged. The court also charged the jury that it was a sufficient defense to the charge of larceny if the wheat was appropriated openly and avowedly under a claim of title preferred in good faith, even though the claim be untenable;

" . . . that if in this case you are satisfied that the defendant Paul Patrick shipped the wheat in question by railroad from Atwood Siding to the City of Seattle, and that such shipping was done openly and avowedly under a claim that he had a right to so ship and sell the same and that such claim was made in good faith and in an honest belief that he had the right so to ship and sell the same, then you should find the defendant not guilty."

■ The assignment that the court erred in granting a trial amendment to the information to show ownership in Radach is without merit. The amendment was made prior to going to trial. It does not appear that appellant claimed surprise or moved for a continuance. In the absence of any claim of surprise

or motion for a continuance in the trial court, error can not be predicated on the allowance of an amendment to the information.

■ Counsel for appellant argues that he was entitled to trial by "an impartial 'jury of his peers'" and that "appellant was entitled to have jurors drawn by lot from the entire county and not jurors selected at the whim and caprice of the judge and sheriff." We are requested in the brief of appellant to read pages 5 to 13 of the statement of facts, which perusal, we are informed, will disclose that it was impossible, under the circumstances, to obtain a fair and impartial trial. Counsel for appellant were aware, before appellant was placed on trial, of the "circumstances." What were the circumstances or conditions? Counsel state,

"Appellant was president of the bank at Ephrata, Washington. He was a country banker; he operated the three warehouses in Grant county; he was a warehouseman. The warehouse and bank failed, as did thousands of other like institutions during the current depression. This court will take judicial notice that Ephrata, the county seat of Grant county, is a village, and Grant county is a sparsely settled farming community."

In other words, appellant was entitled to a change of venue. Well, the request for change of venue to another county can not be urged for the first time on appeal. Not having made a request in the trial court for a change of venue, appellant may not now successfully urge that he did not have a fair and impartial trial in his home county where he made his record and where he was so well known.

We refrain from discussion of other assignments of error, as none presents a novel question and all are without substantial merit. There has been no mis-

carriage of justice in this case. The record does not disclose reversible error.

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.