[No. 28037. *En Banc.* October 16, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v.
L. A. BOULET, *Appellant.*[1]

[1]Reported in 106 P. (2d) 311.

*O. S. Galbreath,* for appellant.

*Thor C. Tollefson, Hugo Metzler, Jr.,* and *William N. Goodwin,* for respondent.

MILLARD, J.—Predicated upon the statute (Rem. Rev. Stat., § 2601 [P. C. § 8944]) which provides that

"Every person who, with intent to deprive or defraud the owner thereof— . . .

" (3) Having any property in his possession, custody or control, as bailee, . . . servant, . . . agent, . . . shall . . . withhold or appropriate the same to his own use or to the use of any person, other than the true owner or person entitled thereto; . . .

" . . . shall be guilty of larceny."

the following information charging L. A. Boulet with the crime of grand larceny was filed in the superior court for Pierce county:

"That the said L. A. Boulet in the County of Pierce, in the State of Washington, on or about the 23rd day of September Nineteen Hundred and Thirty-eight did then and there being unlawfully and feloniously have in his possession and control as bailee, servant and agent

of T. Tsujikawa, the owner thereof, personal property consisting of $313.81, lawful money of the United States of America, did secrete, withhold and appropriate the same to his own use, with intent to deprive and defraud the said T. Tsujikawa thereof, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Washington."

Trial to the court sitting with a jury resulted in a verdict finding the defendant guilty as charged. Defendant appealed from the judgment and sentence pronounced upon the verdict.

Counsel for appellant contends that, as the state admitted, and by evidence sought to prove, that appellant's possession of the notes placed in his custody for collection was lawful and not "unlawfully and feloniously" in his possession, as charged in the information, the motion for arrest of judgment, upon the ground that the evidence introduced by the state did not sustain the charge of grand larceny, should have been granted.

The basis of this assignment of error is that the words "have in his possession," instead of the words "having in his possession," follow the word "feloniously." An inspection of the statute (Rem. Rev. Stat., § 2601) discloses that the information is in the language of the statute, with the exception of the error of employing the word "have" instead of the word "having."

The failure to employ the present participle "having" did not mislead the appellant. The charge is clear. Appellant knew that he was charged with the crime of appropriating to his own use the property of another in his possession, custody, or control as a bailee, agent, or servant. If appellant had possession, custody, or control of the notes in question as bailee, agent, or servant, such possession, custody, or control was not unlawful or felonious.

The error is not fatal. The crime is charged in the information substantially in the language of the statute, and the appellant was thereby informed of the crime of which he was accused. *State v. Patrick,* 179 Wash. 510, 38 P. (2d) 261.

Most of the mischiefs with which the world is vexed arise from words, particularly from misuse of words. In charging one with the commission of a crime, accuracy of expression should not be sacrificed to haste. The exercise of care in an attempt to draft an information in the very language of the statute will obviate typographical or grammatical errors.

■ Counsel for appellant argues that, as the notes in question were assigned to appellant in King county and collections on the notes were made in King county, the offense—if committed—was committed in King county; therefore, the superior court for Pierce county was without jurisdiction.

The challenge that the venue was not established is without merit. After the notes were placed in possession of appellant in King county and collections made in that county, appellant took the funds to his place of business in Pierce county and there appropriated the funds to his own use. The unlawful and felonious appropriation of the funds was made when appellant refused to surrender to the complaining witness in Puyallup, Pierce county, the funds appellant then had in his possession. If, however, the offense was partly committed in King county, where the notes were delivered and collection made, and partly in Pierce county where the funds of the complaining witness were appropriated by appellant, the jurisdiction is in either county. Rem. Rev. Stat., § 2013 [P. C. § 9391]; *State v. Knutsen,* 168 Wash. 633, 12 P. (2d) 923.

■ The facts, briefly as follows, establish the status of appellant as a bailee and sustain the verdict that

appellant unlawfully and feloniously appropriated the funds described to his own use while bailee thereof:

L. A. Boulet, who was engaged in business under the firm name of Valley Adjustment Company, received April 25, 1938, from T. Tsujikawa, a resident of Auburn, Washington, four promissory notes for collection.

These notes in the total sum of $711.98 were received by appellant under an agreement with Tsujikawa that appellant collect the amount due, accepting as compensation for his services twenty-five per cent of the amount recovered if the collections were made without resort to court action, and fifty per cent of the amount recovered in the event of the institution of an action at law. Following receipt of information from appellant that the notes had been collected, Tsujikawa, in September 1938, called upon appellant at the office of the latter in Puyallup, Pierce county, for the purpose of receiving $533.98, the amount to which Tsujikawa was entitled under the agreement. Tsujikawa was at that time informed by the appellant that the money was located in appellant's safe, and that his stenographer, who had in her possession the key to the safe, had gone for the day. Appellant assured Tsujikawa that he would see him within a few days. In January, 1939, appellant again saw Tsujikawa at the latter's place of business at Auburn and informed him that he could not raise the money with which to pay Tsujikawa "if he went to jail." A representative of the Tacoma Better Business Bureau called upon the appellant January 17, 1939, at appellant's office in Puyallup concerning the notes, and was informed by appellant that, although the collections had been made, the funds had been used and payment was impossible.

On cross-examination, Tsujikawa stated that he had assigned his claim against the appellant to Carstens Packing Company for the purpose of application of the

amount due from appellant upon an open account of Tsujikawa with the Carstens Packing Company. It is clear that this assignment was made after appellant made the collections on the notes, and that Tsujikawa is owner of the claim against appellant if the Carstens Packing Company is unable to realize on the assignment. Tsujikawa testified in answer to the question, "And you have no interest in it at all?" that "Not now. Of course until Mr. Carstens gets his money from Mr. Boulet, it is still against me."

The contention that the complaining witness assigned all claim of ownership to the notes or money to the Carstens Packing Company prior to the date the information was filed against appellant, is without merit. At the time of the commission by appellant of the crime with which he is charged, the complaining witness owned the property which was the subject of the larceny. The fact that subsequently the property was assigned by its owner to another, if it were so assigned, would not be material.

 Counsel for appellant next complains that, over objection, the court appointed an interpreter who was prejudiced against appellant.

A Mr. T. Semba, who is engaged in the life insurance business and who has resided in Tacoma for thirty-eight years, was called by the state to act as an interpreter for the Japanese witnesses who could not speak English. Mr. Semba was born in Osaka, Japan, speaks English fluently, and has acted as an interpreter during the trial of a number of cases. His answers respecting his qualifications disclosed that he was a competent interpreter. Mr. Semba was not related to any of the parties. He did not know anything concerning the facts in this particular action, and there is no showing that he was interested in any way in the outcome of this case. He was not requested until after nine a. m. the

first day of the trial to act as an interpreter. Appellant was not denied the opportunity of calling his own interpreter, and there is no contention that Mr. Semba failed to interpret correctly the testimony of the witnesses. The only offer of proof that the interpreter was prejudiced against appellant was made as follows by counsel for appellant: "I offer to introduce testimony by Mr. Boulet to show that he sued this man."

There is no showing of disqualification by reason of interest, bias, or the like. Whether a particular person is too interested to be qualified to serve as an interpreter, is ordinarily within the discretion of the trial court. 70 C. J. 494. It is manifest that the trial court's discretion was not abused.

■ Counsel for appellant insists that, as the jury consumed not to exceed seven minutes in arriving at its verdict of guilty, it is patent the jury was influenced by passion or prejudice and the appellant was denied a fair trial.

The assignment is not meritorious. Appellant offered no defense. Substantial evidence on behalf of the state clearly established appellant's guilt. We know of no requirement of law that the jury deliberate for any particular period of time, it being sufficient that they agree upon a verdict within a few minutes. 16 C. J. 1083.

It is unnecessary to discuss the other assignments, all of which we have examined and found to be without substantial merit.

The judgment is affirmed.

ALL CONCUR.